KURPINSKI v. BROWNSTOWN TOWNSHIP BOARD.

1. TOWNSHIPS — AUTOMOBILE JUNK YARD — LICENSES — ARBITRARY POWER.
   A resolution purporting to vest a township board with discretionary power to refuse to grant a license to operate an automobile junk yard without providing any standards to govern its determination is invalid as an attempt to vest the board with arbitrary power (CL 1948, § 445.451).

2. SAME—LICENSE TO OPERATE AUTOMOBILE JUNK YARD.
   A township board's denial to plaintiffs of license to operate an automobile junk yard *held,* arbitrary and capricious and not a lawful exercise of the police power, where property was

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 33 Am Jur, Licenses § 60.

located in an area zoned for "light industrial" uses, near a large oil refinery with tanks for the storage of oil and gasoline and which gives off a large amount of smoke and odors noticeable for a considerable distance in a "general industrial" area and on the opposite side the property is zoned for "general agricultural" use, the denial of the license bearing no reasonable relationship to public health, safety, morals or the general welfare (CL 1948, § 445.451).

Appeal from Wayne; Beers (Henry L.), J., presiding. Submitted January 8, 1957. (Docket No. 13, Calendar No. 46,954.) Decided April 22, 1957.

Mandamus by Stanley Kurpinski and Helen Kurpinski against Roy Vreeland and others as members of Brownstown Township Board to compel issuance of license to operate junk yard for purpose of dismantling automobiles on their property. Writ granted. Defendants appeal. Affirmed.

*Hand, Sullivan, Hull & Kiefer* (*H. Rollin Allen,* of counsel), for plaintiffs.

*Kurt G. Kersten* and *Norman H. Magel,* for defendants.

Dethmers, C. J.    Plaintiffs own property classified by township zoning ordinance for "light industrial" use.    Under township permit they have been operating a wastepaper, scrap iron and metal business on it.    Directly across the road is a large area zoned "general industrial" on which, extending along the road for 3/4 of a mile, is located a large oil refinery, with tanks for storage of oil and gasoline, which industry gives off a large amount of smoke and odors noticeable for a considerable distance: Plaintiffs' property is surrounded by the mentioned "general industrial" zone in front, by "light industrial" zones on the 2 sides, and by a "general agricultural" zone at the rear.    There are but few

houses in plaintiffs' vicinity and they are dilapidated and located in the "light industrial" zone. The trial court observed that pictures in evidence show that plaintiffs' property is in just that kind of area in which one would expect to see a junk-yard business conducted.

Plaintiffs applied to defendants, as members of the township board, for a license to operate on their said property a junk yard for the purpose of dismantling, wrecking and disposing of junk from automobiles. Defendants denied the application. They appeal from mandamus in the court below directing issuance of the license.

Defendants based their denial of the license on a township resolution for licensing and regulation of junk yards, which was adopted under authority of CL 1948, § 445.451 (Stat Ann § 19.731), and on the township zoning ordinance. As the trial court noted, defendants do not now claim that plaintiffs' desired operation, for which license application was made, would violate any of the regulatory provisions of the resolution. It does, however, contain the following paragraph.:

"That the township board may, in its discretion, for a just cause refuse to grant the license provided for herein in pursuance to the provisions of PA 1929, No 12, as amended by PA 1935, No 34."

No right in defendants to deny the license can be predicated on the quoted language of the resolution purporting to give them discretionary power in the premises without providing any standards to govern their determination. At best, it attempts to vest in them power to act arbitrarily and, as such, is invalid under our holding in *Blumlo* v. *Hampton Township Board,* 309 Mich 452, which passed on that identical language.

Nowhere in the zoning ordinance is there an express mention or prohibition of junk yards and it designates no specific zone as the one in which they shall or may be located. Article 12 of the ordinance lists the permitted uses in a "light industrial" zone. The provision of article 12 which defendants contend would be violated by, but which plaintiffs say permits, their proposed operation, reads:

"Uses permitted.    *    *    *

"(d) An industrial plant or activity which is not productive of excessive smoke, fumes, noise or vibration having a noxious or deleterious effect beyond the limits of the lot on which conducted, or of adjoining lots of the same ownership except as specified in article 14."

Defendants say that plaintiffs' junk yard would be violative of the above, in that it would be productive of excessive smoke, fumes and noise and have a noxious or deleterious effect beyond the limits of the lot. Article 12 expressly permits the location in "light industrial" zones of railroad freight or passenger stations or yards with the facilities incident thereto. Defendants admitted in the testimony that these would be productive of as much, if not more, smoke, fumes, noise and traffic as plaintiffs' projected operation and that the same is generally true of the large refinery operation across the road. Defendants also admitted that plaintiffs had requested that the license be issued with a restriction incorporated therein prohibiting burning on the premises and that, so operated, the junk yard would not produce smoke, but that, nonetheless, even on that basis, the license had been denied and would not be granted. Defendants also admitted that the plaintiffs had never refused and were willing to operate the yard to dismantle automobiles in full conformity with the requirements of article 12(d) of the ordinance, and still the license was denied. There were no

proofs adduced that plaintiffs' operations would be, or that automobile dismantling operations generally are, productive of excessive noise or smoke. Defendants admitted that the ordinance did not provide, and that they did not have or know of, a standard for determining what is excessive with respect to smoke or noise and what are noxious and deleterious effects beyond the limits of the lot, such as could be held to be violative of article 12(d).

Neither the resolution nor the ordinance contains standards to which defendants can point as being those under which the proofs would justify denial of plaintiffs' application. We agree with the trial court that there is no evidence that plaintiffs' intended operations would be violative of the ordinance's "light industrial" restrictions and that, under all the circumstances existing in the area, denial of the license bears no reasonable relationship to public health, safety, morals or the general welfare, is arbitrary and capricious and not a lawful exercise of the police power. *Smith v. Plymouth Township Building Inspector,* 346 Mich 57.

Affirmed, with costs to plaintiffs.

SHARPE, SMITH, EDWARDS, VOELKER, KELLY, CARR, and BLACK, JJ., concurred.